# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

MANUEL A. WAGAN,                               1:07-cv-01461 AWI DLB HC

                Petitioner,          FINDINGS AND RECOMMENDATION
                                               REGARDING PETITION FOR WRIT OF
    v.                                       HABEAS CORPUS

                                               [Doc. 2]
K. POWERS-MENDOZA,

                Respondent.
_____/

       Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND

       Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation following a conviction for attempted first degree murder and assault with a deadly weapon on July 25, 1985.  Petitioner was sentenced to an indeterminate life sentence.  (Exhibit A, to Answer.)

       In the instant petition, Petitioner does not challenge the validity of his conviction; rather, he challenges the Board of Parole Hearings ("BPH") finding of unsuitability for parole on August 9, 2006.  (Exhibit B, to Answer.)  Petitioner specifically contends that there was not "some evidence" to support the BPH's finding.

       Petitioner filed a petition for writ of habeas corpus in the San Mateo County Superior Court on August 3, 2006.  (Exhibit D, to Answer.)  The petition was denied in a reasoned decision on September 14, 2006.  (Id.)

       Petitioner filed a petition in the California Court of Appeal, First Appellate District,

1   which was summarily denied on December 21, 2006.  (Exhibit E, to Answer.)

2           Petitioner then filed a petition in the California Supreme Court, which was also

3   summarily denied on July 11, 2007.  (Exhibit F, to Answer.)

4           Petitioner initially filed the instant federal petition for writ of habeas corpus in the United

5   States District Court, Northern District of California, which was subsequently transferred to this

6   Court on October 9, 2007.  (Court Doc. 2.)  Respondent filed an answer to the petition on

7   February 28, 2008, and Petitioner filed a traverse on March 28, 2008.  (Court Docs. 12, 13.)

8                                    STATEMENT OF FACTS

9           Petitioner and the victim lived in the same apartment complex.  On December 18, 1988,

10  the two engaged in an argument regarding an ongoing dispute about a parking space in the

11  complex.  The dispute ended when Petitioner shot at the victim eleven times with a 45-caliber

12  pistol, striking him with seven bullets, including two in the head.  Petitioner continued to shoot at

13  the victim even after he was severely injured and was attempting to flee the area.  Furthermore,

14  Petitioner continued to shoot even after taking the time to reload his gun.  Two of the rounds

15  went into a garage door that was two apartments away from the shooting site.  Another round

16  went through a living room window and into a bedroom closet at a house approximately 40 to

17  50-yards away from the shooting site.

18                                        DISCUSSION

19  I.       Standard of Review

20          On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

21  of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

22  enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries

23  v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th

24  Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy,

25  521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).

26  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its

27  provisions.

28          Petitioner is in custody of the California Department of Corrections pursuant to a state

                                                  2

court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S.

1    at 72.  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the

2    state court identifies the correct governing legal principle from [the] Court's decisions but

3    unreasonably applies that principle to the facts of the prisoner's case."  Williams, 529 U.S. at

4    413.

5           "[A] federal court may not issue the writ simply because the court concludes in its

6    independent judgment that the relevant state court decision applied clearly established federal

7    law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.

8    A federal habeas court making the "unreasonable application" inquiry should ask whether the

9    state court's application of clearly established federal law was "objectively unreasonable."  Id. at

10   409.

11           Petitioner has the burden of establishing that the decision of the state court is contrary to

12   or involved an unreasonable application of United States Supreme Court precedent.  Baylor v.

13   Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the

14   states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a

15   state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th

16   Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

17           AEDPA requires that we give considerable deference to state court decisions. The state

18   court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's

19   interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*,

20   537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

21   II.    Review of Petition

22           A parole release determination is not subject to all the due process protections of an

23   adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see

24   also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural

25   protections that particular situations demand). "[S]ince the setting of a minimum term is not part

26   of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not

27   constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at

28   1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole

                                                        4

board proceeding, the only process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, <u>Pedro</u>, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," <u>Greenholtz</u>, 442 U.S. at 16; 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole," <u>Id.</u>; and 4) the decision of the Board must be supported by "some evidence" having an indicia of reliability. <u>Superintendent, Mass. Correc. Inst. v. Hill</u>, 472 U.S. 445, 455 (1985); <u>Cato v. Rushen,</u> 824 F.2d 703, 705 (9th Cir.1987).

"In <u>Superintendent v. Hill</u>, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record.'  472 U.S. 445, 454 (1985), <i>quoting</i> <u>Wolff v. McDonnell</u>, 418 U.S. 539, 558 (1974)." <u>Sass</u>, 461 F.3d at 1128.  In determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence.  <u>Id</u>.  Rather, the Court must determine whether there is any evidence in the record that could support the conclusion of the disciplinary board.  <u>Id</u>., <i>citing</i> <u>Superintendent v. Hill</u>, at 455-56.  Although <u>Hill</u> involved the accumulation of good time credits, the same standard applies to parole, as both situations "directly affect the duration of the prison term."  <u>Id</u>., <i>citing</i> <u>Jancsek v. Oregon Bd. of Parole</u>, 833 F.2d at 1390.

In making a determination whether an inmate is suitable for parole, the BPH is guided by the following regulations:

(a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.

(b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of

1    unsuitability.

2    15 Cal. Code Regs. §§ 2402(a) and (b).

3         In this case, with regard to the procedural protections outlined in Greenholtz, Petitioner

4    was provided all that is required.  Petitioner was given advance notice of the hearing, he was

5    offered representation by counsel at the hearing, he was granted an opportunity to submit

6    materials for the Board's consideration and an opportunity to be heard during the hearing, and he

7    was provided a written decision explaining the reasons why parole was denied.  See Answer,

8    Exhibit B.

9         At the 2006 parole hearing in denying parole, the BPH relied on the circumstances of

10   Petitioner's commitment offense finding it was carried out in an especially cruel and callous

11   manner demonstrating exceptionally callous disregard for human suffering and the motive was

12   very trivial, the unfavorable psychiatric report, and Petitioner's institutional behavior.  (Exhibit

13   B, at 83-85. )

14        With regard to the circumstances of the commitment offense, the BPH found that it was

15   carried out in an especially cruel and callous manner, as the victim was shot eleven times while

16   standing at the door of his apartment over nothing more than a dispute regarding a parking

17   space.[1]  (Exhibit C, Probation Officer's Report.)  Petitioner continued shooting at the victim even

18   after he was severely injured and was attempting to flee.  (Id.)  Moreover, Petitioner had time to

19   go back to his apartment to reload his firearm and returned to fire even more shots at the victim.

20    (Id.)  The victim was shot in the neck, stomach and top of the head at point blank range. (Id. at

21   86.)  Moreover, the public was definitely at risk of danger as several rounds hit two other homes

22

23        [1] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c)(1) sets forth circumstances
     tending to demonstrate unsuitability for parole regarding the committed offense.  The factors to be considered
24   include:
              (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
25            (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style
              murder.
26            (C) The victim was abused, defiled or mutilated during or after the offense.
              (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for
27            human suffering.
              (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
28
     15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

in the neighborhood. (Id.) In addition, the motive for the crime was very trivial as the victim was shot several times as a result of an argument. (Id.) The BPH found that Petitioner's statement that the crime was committed out of anger was sincere, however, it did not find Petitioner's belief that a lack of communication lead him to the commission of the offense was sincere. The BPH stated, "[t]his panel doesn't feel there were any serious communication difficulties. We were communicating pretty well. You were pissed off and he was pissed off. You were mad. You were angry, that's pretty clear. The communication was going on. That's not the question. That's not the issue. Uh, but you're moving toward it. You have admitted openly, and you've said, 'I was angry", and you've said that. You didn't today represent that this was a self-defense maneuver on your part, that you were and your family were entrapped in the apartment, and that you thought he was going to break in. You didn't go into that explanation. You have evolved a different description of your perceptions, which tells this panel that you're evolving into a better insight into the crime." (Id. at 89.) Based upon these circumstances, "some evidence" supports the BPH's finding that the commitment offense was carried out in an especially cruel and callous manner and demonstrates that Petitioner presents an unreasonable danger to public safety if released.

The BPH also noted that the psychiatric report authored by Doctor Corin Schroeder, dated August 15, 2005, did not support Petitioner's release, and "some evidence" support this finding. (Exhibit B, at 85.) Dr. Schroeder opined that Petitioner "has gained little to no insight into his crime. He has much soul searching to do." (Id. at 58.) Dr. Schroeder opined that Petitioner posed an average risk of harm to others because he has not come to terms with his crime. (Id. at 57.) This information was properly considered pursuant to § 2402(b) as the BPH is allowed to consider "[a]ll relevant, reliable information available to the panel" which includes information on a prisoner's "past and present mental state." See Cal. Code Reg. tit. 15, § 2402(b). Psychological reports are relevant evidence of which the Board is allowed to review and rely on in determining whether a prisoner is suitable for parole. Rosa v. Nielsen, 428 F.3d 1229, 1232-1233 (9th Cir. 2005) (per curiam).

The BPH also noted and considered that Petitioner received nine rules violation reports

1  during his incarceration.[2]  (Exhibit B, at 34.)  Specifically, the third violation which occurred on

2  February 16, 1994, was for the force of violence. (Id. at 34, 57.)  Petitioner engaged in a fight

3  with another inmate over a disagreement.  Such conduct likely constitutes "serious misconduct"

4  pursuant to pursuant to § 2402(c)(6).  In addition, he received rules violations for destruction of

5  state property, disobeying a direct order, participation in a work stoppage, unauthorized calls, and

6  failing to stand for count. (Id. at 34.)  Petitioner's institutional behavior was properly considered

7  under § 2402(b), which provides that "all relevant, reliable information available . . . shall be

8  considered" including such information as the prisoner's "past criminal history, including

9  involvement in other criminal misconduct which is reliably documented; the base and other

10  commitment offenses, including behavior before, during and after the crime; . . . and any other

11  information which bears on the prisoner's suitability for release." Furthermore, "[c]ircumstances

12  which taken alone may not firmly establish unsuitability for parole may contribute to a pattern

13  which results in a finding of unsuitability."

14       In addition, the BPH properly considered the factors supporting Petitioner's release

15  including his education and exemplary work history, stating his "vocations are probably some of

16  the best, . . ., work record that we have ever seen in this panel." (Exhibit B, at 84.)  The BPH

17  pointed out that Petitioner participated extensively in conflict resolution, anger management, AA,

18  NA, self-awareness, and a myriad of other programs which demonstrate productive use of his

19  time during imprisonment. (Id.; Cal. Code Reg. tit. 15, § 2402(d).)  Petitioner also received

20  several laudatory chronos. (Id.)  In addition, Petitioner appeared to have viable parole plans both

21  in the United States and his native country of the Philippines. (Id. at 85.)  However, on balance,

22  these positive aspects did not outweigh the factors of unsuitability.

23       Petitioner contends the Board has relied solely on the immutable circumstances of the

24  underlying offense resulting in a due process violation. In Biggs v. Terhune, 334 F.3d 910, 916-

25  17 (9th Cir.2003), the Ninth Circuit stated that "[a] continued reliance in the future on an

26  unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs

27

28       [2] The BPH noted that because the last three violations related to a  medical problem, they were not used
against him.  (Exhibit B, at 84.)

1   contrary to the rehabilitative goals espoused by the prison system and could result in a due

2   process violation." Although a denial of parole initially can be justified by relying on the gravity

3   of the offense, over time, "should [the prisoner] continue to demonstrate exemplary behavior and

4   evidence of rehabilitation, denying him a parole date simply because of the nature of [his]

5   offense and prior conduct would raise serious questions involving his liberty interest in parole."

6   Irons v. Carey, 505 F.3d 846, 853 (9th Cir. 2007), *citing* Biggs, 334 F.3d at 916. Nevertheless, in

7   both Irons and Biggs, the Ninth Circuit upheld the denials of parole based solely on the

8   commitment offense. Here, the offense itself was not the only reason for the Board's denial.

9   Moreover, although as of the date of the hearing Petitioner served over 15 years in custody,

10  considering the offense, the lack of sufficient insight, unfavorable psychiatric report, and

11  institutional behavior, this Court cannot conclude that the Board's denial of parole has resulted in

12  a due process violation.

13          Finally, with regard to Petitioner's claim that California law and the Fourteenth

14  Amendment guarantee him a fixed term of imprisonment regardless of his suitability for parole,

15  it is without merit.  First, there is no clearly established federal law in support of Petitioner's

16  proposition, and California law does not entitle him to a fixed term until after he is found suitable

17  for parole.  In re Stanworth, 33 Cal.3d 176 (1982).

18          As Respondent submits, Petitioner relies on In re Rodriguez, 14 Cal.3d 639 (1975), to

19  support his argument.  There, the California Supreme Court noted the change in the criminal

20  sentencing scheme, from largely indeterminate (ISL) in nature, to a predominately determinate

21  sentencing scheme (DSL). Petitioner was sentenced prior to the enactment of the DSL.

22  Rodriguez mandated a determinate term-fixing hearing for inmates who were previously

23  sentenced under California's ISL for crimes which later carried determinate sentences.  However,

24  as in Petitioner's case, the DSL is not applicable to first degree murder offenses, including

25  attempt, and therefore it has no applicability whatsoever to Petitioner's sentence.  As cited by the

26  San Mateo County Superior Court, such reasoning was explained in In re Monigold, 139

27  Cal.App. 3d 485, 490 (1985):

28          With the enactment of the DSL certain crimes remained punishable by

                                                    9

indeterminate sentences.  These were basically the life-sentence crimes, such as first degree murder (former § 190.5), kidnaping for robbery or ransom (§ 209), and trainwrecking (§ 218). . . . The punishment for indeterminate crimes cannot be determined as set forth in the determinate sentencing scheme in section 1170 et. seq., and thus section 1168, subdivision (b), provides that for persons not sentenced under those provisions the court shall fix the term or duration of the period of imprisonment.

The sentence for attempted murder under California law has consistently been life, with a minimum term for parole eligibility, and neither the enactment of the DSL or the Rodriguez case have any impact on Petitioner's life sentence.  (Exhibit A; Cal. Penal Code §§ 187, 663.)  In sum, although Petitioner is eventually entitled to a base term, such term cannot be set until after he is found suitable for parole.  In re Stanworth, 33 Cal.3d 176.

RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.      The instant petition for writ of habeas corpus be DENIED; and,

2.      The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   __September 11, 2008__          _____/s/ **Dennis L. Beck**_____
                                                         UNITED STATES MAGISTRATE JUDGE

10